UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cv-00272-FDW-DSC

| | |
|---|---|
| LINDA VENDERBUSH, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> VERITAS TECHNOLOGIES LLC, MORGAN ) <br> MILLER, RICH PISCIELLA, RICK KRAMER, ) <br> TOM KENNEDY, and CARLOS VALAREZO, ) <br> ) <br> Defendants. ) <br> ) | ORDER |

THIS MATTER is before the Court on Defendants Morgan Miller, Rich Pisciella, Rick Kramer, Tom Kenney and Carlos Valarezo's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 6). As the parties have full briefed the Motion, it is now ripe for resolution.

I. PROCEDURAL BACKGROUND

Plaintiff commenced this action on March 29, 2018 in Superior Court in Mecklenburg County, North Carolina. (Doc. No. 1-1). Plaintiff asserts claims for breach of contract, violation of the North Carolina Wage and Hour Act, unjust enrichment, gender discrimination under Title VII of the Civil Rights Act of 1964, and age discrimination under the Age Discrimination in Employment Act against her former employer Veritas Technologies LLC ("Veritas"). Plaintiff also asserts claims for violation of the North Carolina Wage and Hour Act ("WAHA") against Morgan Miller, Rich Pisciella, Rick Kramer, Tom Kenney, and Carlos Valarezo (collectively, the "Individual Defendants"). Defendants removed this action to this Court on May 25, 2018. (Doc. No. 1). On June 1, 2018, the Individual Defendants moved to dismiss for lack of personal jurisdiction. (Doc. No. 6).

## II. STANDARD OF REVIEW

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence[.]" New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, "[w]hen a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro Ar, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted). Under these circumstances, a court must "assume the credibility of [the plaintiff's] version of the facts[,]" "construe all relevant pleading allegations in the light most favorable to the plaintiff[,]" "construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the plaintiff,]" and "draw the most favorable inferences for the existence of jurisdiction." Id. at 558, 560 (citations omitted); Combs, 886 F.2d at 676.[1]

---

[1] The Individual Defendants appear to contend that this Court must not construe the allegations in the Complaint in Plaintiff's favor because Plaintiff has not submitted affidavits to counter the Individual Defendants' declarations. (Doc. No. 9 at 1). Although the decisions rendered by the Fourth Circuit addressed cases where both the plaintiff and the defendant filed affidavits, the Individual Defendants have not cited any binding precedent indicating that a different standard applies when the plaintiff does not file an affidavit addressing the issue of jurisdiction and instead relies on the allegations of her complaint. However, the Fourth Circuit in an unpublished opinion did address this issue and stated:

> Mere allegations of in personam jurisdiction are all that is needed to make a prima facie showing. Dowless v. Warren-Rupp Houdailles, Inc., 800 F.2d 1305, 1307 (4th Cir. 1986). The plaintiff, however, must present affidavits or other evidence if the defendant counters plaintiff's allegations with evidence that minimum contacts do not exist. Barclays Leasing, 750 F. Supp. at 186. Once both parties have presented evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the purpose of determining whether she has made a prima facie showing of jurisdiction. Id.

Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished). The Court believes Clark represents a clarification of the standard, not a deviation. Clark suggests that a plaintiff's allegation is not taken in the

To exercise personal jurisdiction over the defendant, personal jurisdiction "must be authorized by the long-arm statute of the forum state" and "comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). As interpreted by the North Carolina Supreme Court, North Carolina's long-arm statute "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." Universal Leather, 773 F.3d at 558 (citing N.C. Gen. Stat. § 1-75.4(1)(d); Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)). Thus, instead of a two-prong test, courts sitting in North Carolina only consider "whether [plaintiff] has made a prima facie showing that [defendants] had sufficient contacts with North Carolina to satisfy constitutional due process." Universal Leather, 773 F.3d at 559 (citations omitted); see also Cambridge Homes of N.C., L.P. v. Hyundai Constr., Inc., 670 S.E.2d 290, 295 (N.C. Ct. App. 2008).

A court may exercise general jurisdiction or specific jurisdiction over a defendant. Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Bristol-Myers Squibb Comp. v. Superior Court of Cal., San Francisco Cnty., 137 S.Ct. 1773, 1780 (2017) (citations omitted). The "paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" Goodyear Dunlop Tires Operations, S.A. v. Brown,

---

light most favorable when the defendant counters the allegation through evidence and plaintiff fails to respond with evidence. See generally Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 783 (7th Cir. 2003); see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 62 (4th Cir. 1993). However, the Court does not read Clark to hold that allegations that are *not* contradicted by the defendant's evidence are *not* viewed in the light most favorable to the plaintiff. Cf. Combs, 886 F.2d at 676 ("If the existence of jurisdiction turns on disputed factual questions the court . . . may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."). Therefore, the Court views the allegations in accordance with these principles.

3

564 U.S. 915, 924 (2011). In contrast, for a court to have specific jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Bristol-Myers, 137 S.Ct. at 1789 (alterations in original) (quoting Daimler, 571 U.S. at 127).

As Plaintiff only argues the Court possesses specific jurisdiction over the Individual Defendants, the Court's inquiry is limited to this category of jurisdiction. Specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 571 U.S. 277, 284 (2014) (citations omitted). Courts have specific personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945). To make this determination, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002)). However, the defendant's acts and conduct in the state when unrelated to the claims cannot create specific jurisdiction because specific jurisdiction requires an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." Bristol-Myers, 137 S.Ct. at 1781 (quoting Goodyear, 564 U.S. at 919).

### III. FINDINGS OF FACTS

Veritas employed Plaintiff from June 2014 until her resignation on October 18, 2016. (Doc. No. 1-1 at 5, 9). In 2016, Plaintiff worked as a Channel Territory Manager on the sell-to

4

sales team, serving the territories of Virginia, North Carolina, and South Carolina. (Doc. No. 1-1 at 5). Miller served as Plaintiff's direct supervisor from May 2016 until her resignation in October 2016. (Doc. No. 1-1 at 2; Doc. No. 7-3 at 3-4). Veritas maintains a local office in Raleigh, North Carolina, but Plaintiff worked out of Mecklenburg County, North Carolina. (Doc. No. 1-1 at 2, 5). Miller oversaw the team responsible for the region including North Carolina. (Doc. No. 1-1 at 3). Miller traveled to North Carolina monthly, conducted business in North Carolina, and initiated communications with Plaintiff in North Carolina. (Doc. No. 1-1 at 3; see Doc. No. 7-3 at 4). Miller met with Plaintiff approximately four or five times to address issues with her sales and performance. (Doc. No. 7-3 at 4). Pisciella, as Vice President of Sales, served as Miller's direct supervisor and oversaw Veritas's eastern region, which includes North Carolina. (Doc. No. 1-1 at 3; Doc. No. 7-4 at 3). Pisciella traveled to North Carolina, conducted business in North Carolina, and initiated communications with Plaintiff in North Carolina. (Doc. No. 1-1 at 3; see Doc. No. 7-4 at 3-4). The Vice President of Channel Sales Kramer oversaw all North American channel sales. (Doc. No. 1-1 at 4; Doc. No. 7-5 at 3). Kramer directed communications to Plaintiff in North Carolina. (Doc. No. 1-1 at 4). Kennedy, the Public Sector Vice President and General Manager, conducted business in North Carolina (Doc. No. 1-1 at 4) but in the past five years, can only recall traveling to North Carolina once for business (Doc. No. 7-1 at 3). Kennedy does not oversee employees located in North Carolina but does have some contact with customers or prospective customers in North Carolina. (Doc. No. 7-1 at 3). The Senior Director of Inside Sales for the Americas Valarezo lead sales teams servicing customers across the United States and conducted business in North Carolina (Doc. No. 1-1 at 4-5; Doc. No. 7-2 at 3) but did not travel to

5

North Carolina for business during the last thirty months of his employment with Veritas (Doc. No. 7-2 at 3).

Pisciella and Kramer determined Plaintiff's territory. (Doc. No. 1-1 at 4; see Doc. No. 7-4 at 6; Doc. No. 7-5 at 6). All Individual Defendants were in some way involved with compensation plans or determinations. (See Doc. Nos. 1-1, 7-1, 7-2, 7-3, 7-4, 7-5). However, none had final authority on matters of compensation or sales allocation for purposes of commissions. (See Doc. No. 7-1 at 5; Doc. No. 7-2 at 5; Doc. No. 7-3 at 6; Doc. No. 7-4 at 4-5; Doc. No. 7-5 at 4-5). All Individual Defendants reside in states other than North Carolina. (See, e.g., Doc. No. 1-1).

Veritas compensated Plaintiff in 2016 in the form of a salary and commissions pursuant to the commission plan (the "Plan"). (Doc. No. 1-1 at 5). Under the Plan, Plaintiff received higher commissions for sales revenue exceeding her 2016 target of $3,099,998. (Doc. No. 1-1 at 6). Plaintiff's sales revenue for 2016 totaled $4,889,127, which under the Plan, entitled Plaintiff to $368,940 in commissions. (Doc. No. 1-1 at 6-7). In May or April 2016, Valarezo recognized that his team had not handled some deals with customers in Virginia made in March 2016 and informed Kennedy, the Vice President of Veritas, that Valarezo's team should not have applied for the commissions based on these sales. (Doc. No. 7-2 at 6). In or about May 2016, Kennedy moved sales revenue attributed to Plaintiff to a male employee, reducing Plaintiff's commission by $245,740. (Doc. No. 1-1 at 7; see generally Doc. No. 7-1 at 5). When Plaintiff learned of this transfer, she contacted Miller, Pisciella, Kramer, Valarezo, and another member of management to report the problem. (Doc. No. 1-1 at 7). In response, Miller in an email to Pisciella conveyed the problem of the transferred sales revenue and indicated that the transfer was contrary to the Plan

6

and Veritas's past practice. (Doc. No. 1-1 at 8; see Doc. No. 7-3 at 6-7, 9-14). Defendants Pisciella and Kramer did not respond to Plaintiff's inquiry. (Doc. No. 1-1 at 8; see Doc. No. 7-4 at 6-8; Doc. No. 7-5 at 7). Meanwhile Defendant Valarezo threatened Plaintiff's colleagues with termination if they advocated for Plaintiff. (Doc. No. 1-1 at 8). Plaintiff appealed Veritas's decision but was unsuccessful. (Doc. No. 1-1 at 8, 9). Appeals are handled by the Geography Compensation Exception Committee ("Committee"). (See, e.g., Doc. No. 7-5 at 5). None of the Individual Defendants are members of the Committee. (See, e.g., Doc. No. 7-1 at 5-6; 7-2 at 5; 7-3 at 6; 7-4 at 7; 7-5 at 5). Subsequently, Miller questioned Plaintiff's capabilities in her job, commented that her employment may not work out, and purposefully scheduled meetings with little notice or purpose, hindering Plaintiff's performance. (Doc. No. 1-1 at 9). Plaintiff resigned on October 18, 2016. (Doc. No. 1-1 at 9). Veritas never paid Plaintiff the $245,740 in commissions. (Doc. No. 1-1 at 9).

## IV. ANALYSIS

"Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation." Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc., 299 F.Supp.2d 505, 513 (D. Md. 2004) (citations omitted); see also Saft Am., Inc. v. Plainview Batteries, Inc., 659 S.E.2d 39, 49 (N.C. Ct. App. 2008) (Arrowood, J., dissenting) ("To base personal jurisdiction on the bare fact of a defendant's status as, e.g., corporate officer or agent, would violate his due process rights."), rev'd for reasons stated in dissent, 673 S.E.2d 864 (N.C. 2009) (per curiam); Robbins v. Ingham, 635 S.E.2d 610, 615 (N.C. Ct. App. 2006) ("[P]ersonal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the

forum."). Yet, a defendant's status as an employee does not "insulate [him] from jurisdiction[.]" Calder v. Jones, 465 U.S. 783, 790 (1984). Instead, the court must assess individually each defendant's contacts with the forum state without distinction for his role in the act—for his personal purposes, for an employer, or for a third party. See id.; Columbia Briargate Co. v. First Nat'l Bank, 713 F.2d 1052, 1058 (4th Cir. 1983); see also Harte-Hanks, 299 F.Supp.2d at 513-514.

> As explained by the Fourth Circuit :
>
> [W]e are persuaded that when a non-resident corporate agent is sued for a tort committed by him in his co[r]porate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

Columbia Briargate, 713 F.2d at 1064-65 (emphasis omitted).

In their Motion, the Individual Defendants argue that all three factors articulated by the Fourth Circuit demonstrate that Plaintiff has not satisfied her burden of making a prima facie showing in support of her assertion of specific jurisdiction. (Doc. No. 6-1 at 10-15). However, because the defendant's acts and conduct in the state when unrelated to the claims cannot create specific jurisdiction, Bristol-Myers, 137 S.Ct. at 1780, and the lack of contacts will not defeat proper jurisdiction, see Calder, 465 U.S. at 788, the Court focuses its inquiry on the second factor: whether Plaintiff's claim under WAHA arises out of the acts directed at North Carolina by each Individual Defendant. (Doc. No. 6-1 at 12). The Individual Defendants contend none of the

8

Individual Defendants decided to deny her the commissions for the 2016 Fiscal Year initially or on appeal, and any role the Individual Defendants exercised did not take place in North Carolina or involve communications in or to North Carolina. (Doc. No. 6-1 at 12).

A. Miller

Miller oversaw the team responsible for the region including North Carolina and served as Plaintiff's direct supervisor from May 2016 until her resignation in October 2016. (Doc. No. 1-1 at 2- 3, 5, 9; Doc. No. 7-3 at 3-4). Miller traveled to North Carolina monthly, conducted business in North Carolina, and initiated communicated with Plaintiff in North Carolina. (Doc. No. 1-1 at 3; see Doc. No. 7-3 at 4). Miller met with Plaintiff approximately four or five times to address issues with her sales and performance. (Doc. No. 7-3 at 4). When informed by Plaintiff in May of Kennedy's transfer of commissions (Doc. No. 1-1 at 6), Miller conveyed to her supervisor, Pisciella, the problem of transferred sales revenue and indicated that the transfer was contrary to the Plan and Veritas's past practice. (Doc. No. 1-1 at 8; see Doc. No. 7-3 at 6-7). As undisputed by Plaintiff, issues concerning allocations ultimately are addressed by the Committee. (Doc. No. 7-3 at 6). Miller is not a member of the Committee. (Doc. No. 7-3 at 6). Afterwards Miller questioned Plaintiff's capabilities and her employment with Veritas while frequently scheduling meetings with little notice or no apparent purpose. (Doc. No. 1-1 at 9; see Doc. No. 7-3 at 5).

As to Miller, there is no allegation of any communication or other act relating to the nonpayment of the 2016 commissions in North Carolina.[2] Miller's email was directed to her superior Pisciella, who is not a resident of North Carolina. There is no allegation that Miller made or was involved in a decision as to the reallocation of the sales revenue or denial of the appeal of

---

[2] The alleged hostility directed at Plaintiff in North Carolina does not provide a basis for a claim of nonpayment of wages. It is not an element of the cause of action. See N.C. Gen. Stat. §§ 95-25.7, 95-25.22.

the reallocation. Plaintiff instead alleges Kennedy made the decision to reallocate the sales revenue. (Doc. No. 1-1 at 7). In fact, Miller was not employed by Veritas until May 2016, the month of the reallocation. (Doc. No. 7-3 at 3). As undisputed by Plaintiff, the Committee, not Miller, addressed the appeal as to the commission. (Doc. No. 7-3 at 6). Thus, the general allegation that Miller was "involved in the decision-making process with regard to [Plaintiff's] compensation[,]" does not support jurisdiction on this claim. (Doc. No. 1-1 at 3). There is no "affiliation between the forum and the underlying controversy"; no "activity" or "occurrence" involving Miller as to this claim that takes place or is directed at Plaintiff in North Carolina. Bristol-Myers, 137 S.Ct. at 1781 (quoting Goodyear, 564 U.S. at 919). Unlike the cases cited by Plaintiff, there is no allegation or affidavit that Miller decided or was involved in the decision to reallocate the sales revenue or deny the appeal after the reallocation, which are the basis for Plaintiff's claim.[3] (See Doc. No. 9 at 4 (citing Doc. No. 8 at 10-11)). Cf. Columbia Briargate, 713 F.2d at 1061 (noting the relevance of a "causal connection" between the corporate agent and claim to the court's jurisdiction over the agent). Thus, the Court dismisses the claim as to Defendant Miller.

B. Pisciella and Kramer

---

[3] Leong v. SAP Am., Inc., 901 F. Supp. 2d 1058, 1063-64 (N.D. Ill. 2012) (finding jurisdiction where defendant, as alleged, made decisions "regarding . . . compensation and employment which she knew would affect [plaintiff's] job in Illinois" and "was in direct contact with her about th[e] issue" which all directly gave rise to her claim under the Equal Pay Act); Speraneo v. Zeus Tech., Inc., No. 4:12-CV-578-JAR, 2012 U.S. Dist. LEXIS 97498, at *11 (E.D. Mo. July 13, 2012) (finding jurisdiction where defendant's "alleged acts, i.e., 'repeated communications, false promises, derogatory comments, and efforts to force Speraneo to resign,' were related to Speraneo's ongoing employment with Zeus, transmitted to Speraneo in Missouri, and underlie his discrimination claim"); Liggins v. Eckerd Corp., No. 1:97CV01341, 1998 U.S. Dist. LEXIS 13998, at *3, 7 (M.D.N.C. July 29, 1998) (finding jurisdiction for claim of discrimination under the Civil Rights Acts where defendant, the regional pharmacy operations manager, "informed Plaintiff that she had made the decision not to promote him" when Plaintiff was in North Carolina); see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 358-59 (S.D.N.Y. 2007) (finding defendants conduct of assigning her work by telephone, email, and fax to her home office in New York "sufficient to demonstrate purposeful transaction" with a substantial nexus to plaintiff's claim of employment discrimination because the work assignments are alleged to be instances of disparate treatment).

Viewing the allegations and affidavits in the light most favorable to Plaintiff, Pisciella and Kramer took no direct action after being informed by Plaintiff of Kennedy's reallocation of sales away from her. Pisciella, as Vice President of Sales, and Kramer, as Vice President of Channel Sales, oversaw regions, which included North Carolina. (Doc. No. 1-1 at 3, 4). In addition, Pisciella traveled to North Carolina, conducted business in North Carolina, and initiated communications with Plaintiff in North Carolina. (Doc. No. 1-1 at 4). Kramer also directed communications to Plaintiff in North Carolina. (Doc. No. 1-1 at 4). However, no allegation in the complaint or testament in the affidavits tie any acts by Pisciella or Kramer in North Carolina to the alleged claim of nonpayment of commissions, and like Miller, there is no allegation or contradiction of their testimony that they were not involved in the decision to reallocate the sales revenue or to deny Plaintiff's appeal. (Doc. No. 7-4 at 5-7; Doc. No. 7-5 at 4-5, 6-7). Their status as a corporate employee alone cannot support jurisdiction by this Court. See Columbia Briargate, 713 F.2d at 1064-65. As the record shows no action toward the forum state or towards Plaintiff by Pisciella and Kramer relating to Plaintiff's claim, the Court lacks jurisdiction regardless of their other contact with the state. See Bristol-Myers, 137 S.Ct. at 1780. Accordingly, the Court grants the motion to dismiss as to Pisciella and Kramer.

C. Valarezo

The Senior Director of Commercial Sales Valarezo led sales teams servicing customers across the United States and conducted business in North Carolina (Doc. No. 1-1 at 4-5) but did not travel to North Carolina for business between 2015 and 2017 (Doc. No. 7-2 at 3). In May or April 2016, Valarezo recognized that his team had not handled some deals with customers in Virginia made in March 2016 and informed Kennedy that Valarezo's inside sales team should not

have applied for the commissions based on these sales. (Doc. No. 7-2 at 6). Valarezo's inside sales team territory overlapped with the sales territory of Plaintiff, which sometimes resulted in them both receiving sales revenue allocations because of the same sale. (Doc. No. 7-2 at 5). Subsequently, Valarezo's team withdrew their application for allocation, and Kennedy reallocated the commissions that had been associated with Valarezo's inside team and Plaintiff's sales territory. After Plaintiff contested the reallocation, Valarezo threatened Plaintiff's colleagues with termination if they advocated for Plaintiff. (Doc. No. 1-1 at 8).

Unlike Miller, Kramer, and Pisciella, Valarezo acted as to the commissions. Viewing the facts in the light most favorable to Plaintiff, he was involved in the initial decision to reallocate the shares by informing Kennedy that the sales should not be credited to his team, which implicated Plaintiff's commission due to their overlapping territory in Virginia. Through this act, he harmed Plaintiff in North Carolina. The Individual Defendants do not dispute that Plaintiff was harmed by such decision in North Carolina but argue that "they cannot be subject to jurisdiction based on Plaintiff's decision to live in North Carolina." (Doc. No. 6-1 at 13). The Individual Defendants are correct that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 417 (1984). However, Plaintiff's residence is not a unilateral activity in this case. Valarezo worked for Veritas as Senior Director of Inside Sales for the Americas knowing Veritas had offices and employed others in North Carolina. (Doc. No. 7-2 at 3). Veritas employed Plaintiff to work out of North Carolina. (Doc. No. 1-1 at 5). Valarezo oversaw an inside sales team that serviced customers in North Carolina and other states like Virginia that overlapped with the sales territories

12

of employees in North Carolina like Plaintiff. (Doc. No. 1-1 at 4; Doc. No. 7-2 at 5). Valarezo does not attest that he did not conducted business in North Carolina but states a lack of recollection, and he only attests that he did not travel to North Carolina for any purpose for approximately two and half years out of his 18-year career with Veritas. (Doc. No. 7-2 at 3). Therefore, Valarezo's affiliation with the forum is not merely based on Plaintiff's contact with North Carolina nor is it "random, fortuitous, or attenuated[.]" Walden, 571 U.S. 277 at 286 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).[4]

Valarezo's contacts are different than precedent finding specific jurisdiction wanting. Unlike Walden, Valarezo as part of his occupation engaged and oversaw those who engaged with customers in North Carolina and had to coordinate with employees in North Carolina with overlapping territory. He was not a police officer working for one city in Georgia. Walden, 571 U.S. at 279. Given these contrasting occupational roles and responsibilities, Valarezo's engagement or effects on people in other states in the course of his business was not fortuitous or attenuated. Unlike a police officer who seizes the property of an individual within the bounds of his jurisdiction whose act is in no way related to the individual's choice of abode, see generally id. at 279-80, Valarezo's actions in his occupation and the residences of the individuals he affects are interdependent.

The Fourth Circuit case relied on by the Individual Defendants, ESAB Group, Inc. v. Centricut Inc., 126 F.3d 617 (4th Cir. 1997) is similarly distinguishable. In ESAB, the individual

---

[4] The Individual Defendants argue the exercise of personal jurisdiction would be unreasonable because it "would be tantamount to holding them individually responsible for a corporate decision over which they have no authority." (Doc. No. 6-1 at 13). However, at this stage, the Court is not determining the merits and considers the facts in the light most favorable to Plaintiff. Valarezo and Kennedy were the impetus for the reallocation of the commission; they were involved in the decision causing the harm to Plaintiff. Whether they had the unilateral authority to reallocate commissions is not determinative for purposes of specific jurisdiction.

defendant, a resident of New Hampshire, entered into a contract with a resident of Florida, which could result in harm through a reduction of sales of ESAB Group, a company headquartered in South Carolina. Id. at 625. The Fourth Circuit believed the lack of other contacts with South Carolina and the speculative rather than targeted focus on South Carolina rendered the resulting harm in South Carolina to ESAB Group "too unfocused to justify personal jurisdiction." Id. The Fourth Circuit, like in Walden, found that allowing jurisdiction would permit jurisdiction solely based on where plaintiff suffered the resulting harm, which is typically the plaintiff's residence, instead of a defendant's decision to "purposely avail[] itself of the privilege of conducting activities within the forum state." Id. at 625-26 (citations omitted). In contrast to ESAB, Valarezo was involved in a decision to take away sales revenue that had been recognized as properly attributed to Plaintiff by Veritas. His intention was to have the sales revenue taken away from his team and Plaintiff and given to Kennedy. His threats, after the reallocation, to suppress support for Plaintiff further supports this intent. Thus, the relationship between Valarezo, the forum, and the claim are more akin to Calder, where the court had specific jurisdiction.

Calder was a Florida resident who had only been to California twice, once for pleasure and once to testify in an unrelated trial. Calder, 465 U.S. at 786. However, he was the president and editor of the National Enquirer with overseeing responsibilities. Id. He reviewed and approved the evaluation of the subject, edited the final form of the resulting article, and declined to print a redaction requested by the plaintiff. Id. Because of the article, the plaintiff, a California resident, sued Calder for libel. Id. The Supreme Court affirmed the trial court's specific jurisdiction over Calder highlighting that his and his reporter's actions were intentionally and expressly aimed at California, and they knew the brunt of the injury would be felt where the plaintiff lived and worked.

Id. at 789. In this case, Valarezo also had an occupation requiring his oversight over acts in other states and was involved in the decision to reallocate revenue that had been given to Plaintiff to another at the expenses of $245,740 to her. Valarezo intentionally took action and engaged with Kennedy. He knew that his acts would harm the original recipients of the sales revenue and knew that those harmed individuals would include employees in North Carolina. Thus, at this stage, Plaintiff has met her burden of showing Valarezo purposefully availed himself of the privilege of conducting activities in North Carolina, Plaintiff's claim arises out of such acts, and jurisdiction is constitutionally reasonable. Consulting Engineers, 561 F.3d at 278 (quoting ALS Scan, 293 F.3d at 712). There is a "the relationship among the defendant, the forum, and the litigation" that is not based solely on Plaintiff's unilateral actions. Walden, 571 U.S. at 284 (citation omitted).

Valarezo also has not challenged the exercise of jurisdiction as constitutionally unreasonable because of the difficulty or inconvenience of a suit in North Carolina or North Carolina's interest in the claim. See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 303 (4th Cir. 2012). Valarezo instead contends he lacked final authority as to revenue allocation, rendering this Court without jurisdiction. However, the Court cannot conclude at this stage that it is constitutionally unreasonable for a defendant to defend himself in this Court on these facts merely because his corporate employer has not bestowed upon him the final authority as to revenue allocations. Without binding authority to support the Individual Defendant's claim on constitutional unreasonableness, the Court is wary of accepting such a proposition that could be strategically used to insulate many from jurisdiction when liability for corporate acts may not be limited to those with final authority. Cf. N.C. Gen. Stat. §§ 95-25.2(5), 95-25.7, 95-25.22; Columbia Briargate, 713 F.2d at 1065 ("In reaching this conclusion, we are

15

influenced strongly by the consideration that this application of the rule of amenability to jurisdiction as adopted removes that contradiction or 'dichotomy' perceived by Marine Midland 'between the principles governing the personal liability of corporate agents for torts committed in their corporate roles and the principles governing the amenability of such agents to personal jurisdiction solely on the basis of those acts.'"); Calder, 465 U.S. at 790 ("[Defendants'] status as employees does not somehow insulate them from jurisdiction."). Additionally, as Plaintiff has raised, Valarezo is being represented by counsel for Veritas, which undermines any claim of inconvenience. (Doc. No. 8 at 14). Thus, the Court denies the motion to dismiss as to Valarezo.

### D. Kennedy

Kennedy also purposefully availed himself of the privileges of conducting activities in North Carolina, and his actions toward Plaintiff in North Carolina give rise to Plaintiff's claim. Specifically, in May 2016, Kennedy directed and received the reallocation of sales revenue attributed to Plaintiff, reducing her commission for the 2016 fiscal year. (Doc. No. 1-1 at 7; see generally Doc. No. 7-1 at 5). Because of his position as Public Sector Vice President and General Manager, his admitted regular review of sales allocations (Doc. No. 7-1 at 5), and his apparent knowledge that the sales revenue had been allocated to Plaintiff (Doc. No. 1-1 at 6), Kennedy knew his request would harm his co-employee who was employed in North Carolina. Kennedy also conducted business in North Carolina as part of his position. (Doc. No. 1-1 at 4; Doc. No. 7-1 at 3). Thus, there is sufficient nexus between Kennedy, North Carolina, and Plaintiff's claim for nonpayment of the commission like in Calder at this stage. The Court's analysis of Valarezo and the relevant precedent applies equally to Kennedy, as does the conclusion as to the reasonability of jurisdiction. Hence, the Court denies the motion to dismiss as to Kennedy.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART without prejudice Defendants Morgan Miller, Rich Pisciella, Rick Kramer, Tom Kennedy and Carlos Valarezo's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 6). The Court grants the Motion as to Morgan Miller, Rich Pisciella, and Rick Kramer and dismisses them from this action.[5] The Court denies the Motion as to Tom Kennedy and Carlos Valarezo.

IT IS SO ORDERED.

Signed: July 16, 2018

Frank D. Whitney
Chief United States District Judge

---

[5] Plaintiff raises in her response that the Court could order jurisdictional discovery if the Court "cannot sufficiently evaluate whether it has jurisdiction." (Doc. No. 8 at 16). The Court, however, can sufficiently address the issue of jurisdiction and declines to exercise its discretion to order jurisdictional discovery *sua sponte*. When assertions of contacts are speculative or conclusory, courts may deny jurisdictional discovery, especially when they fail to respond to the defendant's proffer of proof of the lack of contacts. Carefirst of Md. Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (citing McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983)). As addressed fully in the analysis, Plaintiff did not allege that Miller, Pisciella, or Kramer was involved in the decision to reallocate the revenue or to address her appeal of the decision to reallocate and has not offer any evidence in response to their affidavits attesting that they were not involved in these decisions. Plaintiff's allegation that they were involved in her compensation is a generic assertion that does not speak to the WAHA claim for nonpayment of the 2016 commission. As raised by the Individual Defendants, her evidence, regardless of its admissibility or the propriety of tendering a letter from corporate counsel for Veritas related to settlement discussions for the Court's consideration, does not address the WAHA claim for nonpayment of the 2016 commission. Instead, the letter generally lists people involved in her compensation in response to her allegation of sex and age discrimination. In fact, as plead in the complaint filed after receiving the letter, Plaintiff only alleges Kennedy was involved in the decision as to the 2016 commission. Thus, in this case, limited jurisdictional discovery to explore jurisdictional facts is not warranted. See generally Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993) (affirming court's denial of motion for jurisdictional discovery).